Yasin M. Almadani (Cal. Bar No. 242798)
ALMADANI LAW
4695 MacArthur Ct., Suite 1100
Newport Beach, CA 92660
(949) 877-7177
YMA@LawAlm.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D., an individual,<br><br>Plaintiff,<br><br>v.<br><br>SPINNAKER INSURANCE COMPANY, an Illinois Company; HIPPO ANALYTICS INC. dba HIPPO ENTERPRISES INC. dba HIPPO INSURANCE SERVICES, a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>**(3) INTRUSION INTO PRIVATE AFFAIRS;**<br>**(4) DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff FIRDOS S. SHEIKH, M.D. ("Plaintiff" or Dr. Sheikh"), by and through her attorney of record, Yasin M. Almadani, brings this action demanding a jury trial against Defendants SPINNAKER INSURANCE COMPANY, an Illinois Company, HIPPO ANALYTICS INC. dba HIPPO ENTERPRISES INC. dba HIPPO INSURANCE SERVICES, a Delaware Corporation, and DOES 1-10, inclusive, (collectively, "Defendants") for breach of contract, breach of the implied covenant of good faith and fair dealing, intrusion into private affairs, and declaratory relief. Plaintiff alleges the following based upon personal knowledge and information and belief:

## I. NATURE OF THE ACTION

1. Dr. Sheikh had home insurance coverage with Defendants and was timely making her premium payments. Her property suffered a total loss due to a fire that was covered by Defendants' insurance policy. Instead of honoring the insurance contract and paying out her claim, Defendants engaged in a scheme of bad faith and fraudulent conduct, harassment, and invasion of privacy and refused to pay Dr. Sheikh her rightful benefits under the insurance policy. This suit seeks to vindicate Dr. Sheikh's rights.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, because "the matter in controversy exceeds the sum of value of $75,000 exclusive of interest and costs, and is between—citizens of different States."

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated within the County of Sacramento, State of California, within the Eastern District of California.

## III. PARTIES

### A. Plaintiff

4. Plaintiff FIRDOS S. SHEIKH, M.D. ("Dr. Sheikh") owns a rental property located at 9005 Calvine Road, Sacramento, CA 95829 (the "Property").

**B. Defendants**

5. Defendant SPINNAKER INSURANCE COMPANY ("Spinnaker") is an Illinois Company with its principal place of business in Illinois. Spinnaker provides home insurance coverage throughout the United States, including the Eastern District of California.

6. Defendant HIPPO ANALYTICS INC. dba HIPPO ENTERPRISES INC. dba HIPPO INSURANCE SERVICES ("Hippo") is a Delaware Corporation with its principal place of business in Austin, Texas, provides home insurance coverage throughout the United States, including the Eastern District of California, in conjunction with Spinnaker, which acquired Hippo in September 2020.

7. Spinnaker and Hippo are collectively referred to as "Defendants."

## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A. The Landlord Home Insurance Policy**

8. On June 23, 2020, Defendants issued Dr. Sheikh a landlord home insurance policy for her rental property located at 9005 Calvine Road, Sacramento, CA 95829 for the period of June 23, 2020, to June 23, 2021, Policy No. DCA-2982510-01 (the "Policy"). (Ex. 1 at FS_001-003.)

9. At that time, the Policy was underwritten by Topa Insurance Company. (Ex. 1 at FS_001.)

10. The Policy was relatively comprehensive and included the following coverages, *inter alia*:

    a. Coverage A – Dwelling (your rental property): $670,000
    b. Coverage B – Other structures: $67,000
    c. Coverage C – Household Furnishings: $3,000
    d. Coverage D – Loss of Use: $67,000
    e. Coverage E – Premise Liability: $300,000 (each occurrence)
    f. Coverage F – Medical Payment to Others: $2,000 (each person)
    g. Service Line Coverage: $10,000

h. Limited Fungi, Other Microbes or Rot: $5,000

i. Water Back-Up and Sump Discharge or Overflow: $10,000

j. Additional Replacement Cost Protection: 25% of Coverage A

k. Limited Theft Coverage: $1,000

(Ex. 1 at FS_004.)

11. The Policy states, "Your Hippo Homeowners policy **renews automatically** on each anniversary of your inception date. . . . At Hippo, we take pride in keeping Homeowners insurance simple." (Ex. 1 at FS_006 (emphasis added).)

12. The Policy covers, *inter alia*, loss by fire that is not arson by the insured and not caused by earthquake. The Policy also covers theft and vandalism. (Ex. 1 at FS_004, FS_034-47, FS_72.)

13. Shortly after issuing the Policy on June 23, 2020, Defendants conducted a 10-to-20-minute inspection of the residence and continued to provide coverage.

14. On April 4, 2021, Defendants notified Dr. Sheikh via email that her policy would be renewed automatically and would be "**underwritten by Spinnaker Insurance Company**, a wholly-owned subsidiary of Hippo Enterprises, Inc. . . . There will be **no interruption in service or coverage** and you'll receive the same great Hippo care you've come to expect. . . . Again, your offer provides the same coverage as your prior policy, starting the same day as Topa's coverage ends. Only the carrier underwriting the policy is changing. . . . **We will charge the cc [credit card] account we have on file for you. No other action is needed on your part.** If you don't wish to accept the new policy, simply contact us." (Ex. 2 at FS_73 (emphases in original).)

15. On June 21, 2021, Dr. Sheikh updated her credit card information on Defendants' website for automatic payments towards the renewal policy, and Defendants sent her a confirmation email on the same date confirming payment. (Ex. 3.) All subsequent payments were made timely and automatically.

16. The renewal policy was automatically issued on June 23, 2021, for the period of June 23, 2021 to June 23, 2022. (Ex. 4.) The premium on the renewal policy

was automatically increased as were the coverages, as follows:

   a. Coverage A – Dwelling (your rental property): $725,000 plus 25% of Coverage A for Extended Replacement Cost
   b. Coverage B – Other structures: $72,500
   c. Coverage C – Household Furnishings: $3,000
   d. Coverage D – Loss of Use: $72,500

(Ex. 4 at FS_004.)

**B.  Damage to the Property and Claims Filed**

17. On or about January 25, 2021, there was a fire at the Property (the "First Fire"), and Dr. Sheikh timely filed a claim, informing Defendants of the damage to the Property (the "First Fire Claim"). The First Fire was not the result of an earthquake or arson by the insured and was covered under the Policy. The fire did not result in a total loss.

18. Defendants' representatives visited the property after the First Fire and were well aware that the Property was damaged, unhabitable, and boarded up. Defendants also were aware (as any reasonable person would be) that the Property would not be habitable until the claim was paid, and Dr. Sheikh had the funds to fix it. Dr. Sheikh waited for the claim to be processed and her payment to be issued.

19. Due to the extent of the damage, on or about February 5, 2021, Dr. Sheikh hired the SunPoint firm to help process her claim with Defendants. (Ex. 5.)

20. On or about February 5, 2021, Defendants sent Dr. Sheikh an email confirming that they were actively working on her First Fire Claim. (Ex. 6.)

21. On or about February 9, 2021, Defendants sent Dr. Sheikh a letter stating that they would work with the SunPoint firm to process her claim. Importantly, Defendants acknowledged, ***"You advised us on 02/05/2021 that a fire occurred which is confirmed by Sacremento [sic] Metropolitan Fire Department, report # F21014001. The report indicates the building was boarded up and unoccupied upon their arrival."*** (Ex. 7 (emphasis added).)

22. On or about March 2, 2012, Defendants sent Dr. Sheikh a letter confirming that they were actively processing the First Fire Claim. (Ex. 8.)

23. On or about March 22, 2021, Defendants sent Dr. Sheikh an email confirming that they were actively processing the First Fire Claim. (Ex. 9.)

24. On or about July 4, 2021, there was vandalism at the Property, and Dr. Sheikh timely filed a claim on July 6, 2021, informing Defendants of the damage to the property (the "Vandalism Claim"). The vandalism included transients ripping off some of the boards (boarding up the property) and damaging the garage door to gain access to the property. Dr. Sheikh timely filed a claim, and Defendants indicated that it would be processed. This claim was never paid.

25. Defendants' representatives visited the property again after the Vandalism Claim and continued to be aware that the Property was damaged, unhabitable, and boarded up. Defendants were also aware (as any reasonable person would be) that the Property would not be habitable until the First Fire claim was paid, and Dr. Sheikh had the funds to fix the Property.

26. On or about July 29, 2021, Defendants sent Dr. Sheikh a letter informing her that the First Fire Claim had been processed, along with a check in the amount of approximately $184,002.19.

27. On or about August 2, 2023 (a few days after Dr. Sheikh received payment for the damage caused by the First Fire and before Dr. Sheikh had the chance to fix the Property for occupancy), the Property experienced another fire, which resulted in a total loss to the Property (the "Second Fire"). Dr. Sheikh learned about the Second Fire on or about August 4, 2023, and timely filed a claim (the "Second Fire Claim"). The Second Fire was not the result of an earthquake or arson by the insured and was covered under the Policy.

28. Defendants' representatives visited the property yet again after the Second Fire Claim and led Dr. Sheikh to believe that her claim would be processed. Indeed, there remained significant coverage under the Policy.

COMPLAINT

### C. Defendants Engage in a Scheme to Harass Dr. Sheikh, Invade Her Privacy, and Defraud Her Out of Her Benefits Acting in Bad Faith

29. From October 2021 through February 2022, Defendants devised a scheme to harass Dr. Sheikh, grossly invade her privacy, and deny her Second Fire Claim (for the total loss) by engaging in fraudulent conduct and bad faith.

30. Even though Defendants had automatically renewed Dr. Sheikh's Policy without any need for a renewal application, as stated in their correspondence (see supra ¶¶ 11, 14), Defendants fabricated a computer generated "renewal application" that, according to Defendants, was allegedly completed on March 15, 2021, *which is around the time Dr. Sheikh was actively working with Defendants to process her First Fire Claim* (the "Fabricated Application").

31. The Fabricated Application reflects that Dr. Sheikh allegedly stated the Property had no damage and was occupied, which is Defendants' purported basis for denying Dr. Sheikh's Policy benefits. This is absurd, however, and contrary to the ground reality that Dr. Sheikh was actively processing her First Fire Claim with Defendants from the end of January 2021 through July 29, 2021, with claim correspondence actively being exchanged between Defendants and Dr. Sheikh on or around March 15, 2021, the date of the Fabricated Application. *See supra* ¶¶ 17-26. Based on the correspondence discussed above and attached to this Complaint (*see id.*), there can be no doubt or reasonable dispute that Dr. Sheikh clearly notified Defendants and her insurance agent that the Property was damaged and unoccupied during the First Fire claims process (from the end of January 2021 through July 29, 2021) and certainly as of March 2021.

32. Neither Dr. Sheikh nor her insurance agent completed any renewal application or made any material misrepresentation about the Property in March 2021, as falsely alleged by Defendants to avoid paying Dr. Sheikh's benefits. The renewal was *automatic* as stated by Defendants (*see supra* ¶¶ 11, 14), and all parties at the time were well aware that the Property was damaged, unhabitable, and unoccupied. Defendants thus lied and fabricated a false renewal application to justify their bad faith denial issued

without proper cause.

33. Defendants also embarked on a harassment scheme, forcing Dr. Sheikh to provide the following private and confidential documents, which had little to nothing to do with the Second Fire Claim at issue:

    a. Income tax returns, including all forms, schedules and any supportive documents used to prepare or support these income tax returns.

    b. Cell phone records for all cell phones registered to Dr. Sheikh.

    c. All records or documents relating to any account which you now have, individually or jointly with others, with any bank, savings and loan association, credit union, brokerage or other depository institution. This request includes but is not limited to any statements, checks, passbooks, etc., pertaining to these accounts.

    d. All records or documents relating to any income received by you at any time in the last three (3) years from whatever source derived, including proof of employment. Income would include but should not be limited to all wages, salaries, commissions, inheritances, interest earned, dividends received, rental receipts, and any other forms of cash receipts.

    e. All records or documents relating to any loans, extensions of credit, credit accounts, credit cards or other types of indebtedness or credit made by or extended to you, individually or jointly with others.

    f. All records or documents relating to any taxes paid or reported by you, individually or jointly with others, to any federal, state or local governmental entity in the last three years, including all returns, schedules, forms, parts, and subparts thereof. The term "taxes" as used herein is all inclusive, and includes but is not limited to federal, state or local income taxes, property taxes, tangible or intangible taxes, occupational taxes, etc.

    g. All records or documents relating to any lawsuits or litigation to which you have been a party or otherwise involved, in the last three (3) years.

    h. All records or documents relating to any real estate, or any interest

therein, owned, acquired or sold by you, either individually or jointly with others, within the last three (3) years.

      i.    All records or documents relating to any bankruptcies within the last three (3) years.

34. These draconian demands required Dr. Sheikh to provide highly private and confidential information unrelated to any of her claims. The documents were demanded simply to harass and intimidate Dr. Sheikh with the threat of her claim being denied if she did not comply. Little did Dr. Sheikh know that Defendants had already decided to unjustifiably deny her claim and were finding ways to intimidate her and justify their unreasonable, bad-faith actions.

35. Defendants also forced Dr. Sheikh to sit through an examination under oath without representation by counsel as she was unable to afford counsel.

36. During the time of this harassment, Dr. Sheikh was over 60 years old and suffering from, among other things, depression, anxiety, and Post Traumatic Stress Disorder (PTSD). Defendants' harassment, invasion of privacy, and fraud caused Dr. Sheikh extreme stress and aggravated her medical conditions.

37. On February 18, 2022, Defendants notified Dr. Sheikh that they would neither pay her Second Fire Claim nor her vandalism claim. Instead, they refunded her $249 for the timely premium payments she had made. This was unreasonable because Defendants were obligated to pay Dr. Sheikh her benefits and not entitled to simply return her premiums. Indeed, if insurance companies are allowed to simply return premiums on the filing of a total loss claim, it defeats the purpose of insurance and exhibits bad faith.

38. Defendants thus engaged in breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, and invasion of privacy.

39. On or about April 11, April 29, and May 30, 2022, Dr. Sheikh wrote letters to Defendants pleading with them that her claim was denied in bad faith and requesting immediate payment. Dr. Sheikh's requests fell on deaf ears. To date, she has not been

paid her rightful benefit.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACTUAL DUTY TO PAY A COVERED CLAIM

(*Against All Defendants*)

40.  Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

41.  Plaintiff brings this breach of contractual duty to pay a covered claim against all Defendants (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

42.  The Policy imposes upon Defendants a duty to indemnify Plaintiff for the Second Fire Claim made as a result of the loss to the Property. *See supra* ¶¶ 8-16.

43.  Plaintiff suffered a total loss to the Property as a result of the Second Fire, which was covered under the Policy with Defendants. *See supra* ¶¶ 8-16, 27-28.

44.  Defendants were timely notified of the foregoing loss. *See supra* ¶¶ 27-28.

45.  Defendants failed to pay any portion of the loss, in violation of their contractual obligations under the Policy. *See supra* ¶¶ 37-39.

46.  Defendants' breach of contract directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue, including but not limited to loss of use and loss of rental income.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CLAIM FOR RELIEF

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(*Against All Defendants*)

47.  Plaintiff realleges and incorporates by reference, in this claim for relief, each

and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

48. Plaintiff brings this breach of implied covenant of good faith and fair dealing claim against all Defendants (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

49. In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement. To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests. *See* CACI 2330.

50. As detailed below, Defendants breached the implied obligation of good faith and fair dealing, by unreasonably acting and failing to act in a manner that deprived Plaintiff of the benefits of the Policy. Defendants' actions went beyond a mere failure to exercise reasonable care as Defendants acted and failed to act without proper cause. By doing so, Defendants deprived Plaintiff of the benefits of the Policy. *See supra* ¶¶ 8-16, 27-38.

51. Plaintiff suffered a total loss to the Property as a result of the Second Fire, which was covered under the Policy with Defendants. *See supra* ¶¶ 8-16, 27-28.

52. Defendants were timely notified of the foregoing loss. *See supra* ¶¶ 27-28.

53. Defendants unreasonably failed to pay policy benefits, knowing that the claim should have been paid based on Defendants communications with Plaintiff during the period of January 2021 through July 29, 2021. Defendants had no proper cause for their conduct because the Parties' communications leave no doubt that Defendants' purported reason for denial of the claim—namely, that Plaintiff allegedly did not inform Defendants that the property was damaged and vacant as of March 2021—has no factual basis. Rather, it is based on a fraudulent document fabricated by Defendants and belied by the facts. Indeed, in a letter on February 5, 2021, Defendants openly acknowledged,

"You advised us on 02/05/2021 that *a fire occurred* which is confirmed by Sacremento [*sic*] Metropolitan Fire Department, report # F21014001. The report indicates the building was **boarded up and unoccupied** upon their arrival." *See supra* ¶¶ 17-23 (emphases added).

54. Furthermore, throughout March 2021 and into the summer, Defendants continued to process this claim, which was not paid until July 29, 2021. During the period of the First Fire Claim pendency, Defendants' representatives visited the property several times and were continually aware that the Property was damaged, vacant, and boarded up. By Plaintiff's reporting and prosecution of her claim from January through July 2021, Defendants knew or should have known throughout the claims process that the property was damaged and vacant. Hence, Defendants' concocted investigation with a fabricated document and denial of benefits was fraudulent and unreasonable and without factual support or proper cause. *See supra* ¶¶ 17-39.

55. Based on the foregoing, Defendants acted unreasonably and without proper cause by, *inter alia*, (a) misrepresenting to Plaintiff relevant facts or insurance policy provisions relating to the coverage at issue; (b) failing to acknowledge and act reasonably promptly after receiving communications about Plaintiff's claim arising under the insurance Policy; (c) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the insurance Policy; (d) failing to accept or deny coverage of claims within a reasonable time after Plaintiff completed and submitted proof-of-loss requirements; (e) failing to attempt in good faith to reach a prompt, fair, and equitable settlement of Plaintiff's claim after liability had become reasonably clear; (f) requiring Plaintiff to file a lawsuit to recover amounts due under the Policy by unreasonably rejecting the claim; (g) refusing to settle the claim on the basis of an application that was fabricated by Defendants without notice to, or knowledge or consent of Plaintiff's representative, agent, or broker, all in violation California Insurance Code § 790.03(h). *See id.*

56. Defendants thus engaged in despicable conduct that was fraudulent,

malicious, and oppressive, in violation of Cal. Civ. Code § 3294. *See id.*

57. Plaintiff suffered significant harm as a result of Defendants' bad faith and unreasonable, fraudulent conduct, and failure to pay, including loss of use, loss of rental income, and severe emotional distress, which aggravated Plaintiff's existing medical conditions.

58. Defendants' failure to pay the Policy benefits was a substantial factor in causing harm to Plaintiff.

59. Defendants' breach of the covenant of good faith and fair dealing directly, proximately, and substantially caused Plaintiff to suffer significant injury and damages that continue to accrue.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF
### INTRUSION INTO PRIVATE AFFAIRS
(*Against All Defendants*)

60. Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

61. Plaintiff brings this intrusion into private affairs claim against all Defendants (for purposes of this claim for relief, "Defendants") and makes allegations at all times relevant to this Complaint.

62. Plaintiff had/has a reasonable expectation of privacy in her tax returns and associated documents, cell phone records, bank records, income records, property records (unrelated to the claim at issue), credit records, and other financial records that have little to no relation to the Second Fire Claim.

63. In order to harass Plaintiff and place unreasonable hurdles in her claim, Defendants intentionally intruded in Plaintiff's private affairs by forcing her to produce the foregoing documents, which had little to nothing to do with her claim. Defendants

made the demands to harass and intimidate Plaintiff and scare her away from her legitimate total loss claim. *See supra* ¶¶ 32-36.

64. Defendants' intrusion into Plaintiff's private matters would be highly offensive to any reasonable person. It is draconian to demand such a laundry list of highly private and protected documents (unrelated to the claim at issue) from a person over 60 years old who was unable to afford a lawyer. Defendants thus engaged in despicable conduct that was fraudulent, malicious, and oppressive, in violation of Cal. Civ Code § 3294. *See id.*

65. Plaintiff was harmed by being forced to unnecessarily and unreasonably disclose her private affairs to have her claim processed. She suffered additional harm in the form of severe emotional distress, which aggravated her existing medical conditions.

66. Defendants conduct was a substantial factor in causing Plaintiff's harm, which continues to accrue, as Defendants continue to be in possession of Plaintiff's private information.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **FIFTH CLAIM FOR RELIEF**
### **DECLARATORY RELIEF**
(*Against All Defendants*)

67. Plaintiff realleges and incorporates by reference, in this claim for relief, each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

68. Plaintiff alleges that an actual controversy has arisen by and between Plaintiff, on the one hand, and Defendants, on the other, with respect to the parties' respective rights and obligations under the insurance Policy.

69. Pursuant to California Civil Code § 1060, Plaintiff seeks a judicial declaration that, with respect to the Policy:

    a. Direct physical loss or damage to the Covered Property occurred

during the Policy Term; and

        b.     No other coverage defenses apply.

70.    Plaintiff has no other plain, speedy, or adequate remedy at law.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, on the basis of the foregoing claims, Plaintiff prays that the Court grant judgment against Defendants as follows:

1.    General and compensatory damages in an amount according to proof;

2.    Special damages according to proof;

3.    Costs, restitution, and multiple damages according to proof;

4.    Punitive and exemplary damages according to proof;

5.    Any and all applicable statutory and civil penalties;

6.    Pre- and post-judgment interest on any amounts awarded;

7.    An award of attorneys' fees and costs, including expert costs;

8.    An order to return and destroy and not retain any information collected in violation of Plaintiff's privacy rights;

9.    Leave to amend this complaint to conform to the evidence produced in discovery and at trial; and

10.    Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

Dated: August 1, 2023  ALMADANI LAW

By: */s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.

*Attorneys for Plaintiff*