UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRDOS SHEIKH, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>SPINNAKER INSURANCE COMPANY, et al.,<br><br>            Defendants. | No. 2:23-cv-01582-TLN-SCR<br><br>**ORDER** |

This matter is before the Court on Defendants Spinnaker Insurance Company and Hippo Analytics Inc.'s ("Defendants") Motion to Dismiss. (ECF No. 9.) Plaintiff Firdos Sheikh ("Plaintiff") filed an opposition. (ECF No. 13.) Defendants filed a reply. (ECF No. 15.) For the reasons set forth below, the Court DENIES Defendants' motion.

///
///
///
///
///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an insurance coverage dispute. Plaintiff owns a property at 9005 Calvine Road, Sacramento, California (the "Property"). (ECF No. 1 at 2.) Defendants are home insurance providers. (*Id.* at 3.) On June 23, 2020, Defendants issued Plaintiff a landlord home insurance policy for the Property, covering the period of June 23, 2020, to June 23, 2021 (the "Policy"). (*Id.* at 3.) The Policy states that it "renews automatically on each anniversary." (*Id.* at 4.) In relevant part, the Policy covers: (1) loss by fire that is not arson by the insured; (2) theft; and (3) vandalism. (*Id.*)

There are three distinct insurance claims at issue in this case. First, on or about January 25, 2021, a fire broke out at the Property (the "First Fire"). (*Id.* at 5.) The First Fire was allegedly not a result of arson by the insured and was not a total loss. (*Id.*) Plaintiff filed a timely claim with Defendants. (*Id.*) Second, on or about July 4, 2021, the Property was vandalized. (*Id.* at 6.) The vandalism included removal of boards that had been installed around the property and damage to the garage door. (*Id.*) Plaintiff again filed a timely claim with Defendants. (*Id.*) Third, on or about August 2, 2021,[1] another fire occurred at the Property (the "Second Fire"). (*Id.*) The Second Fire was allegedly not a result of arson by the insured and this time resulted in a total loss. (*Id.*) Plaintiff again filed a timely claim with Defendants. (*Id.*)

On March 15, 2021, after the First Fire claim but before the vandalism claim, Defendants allegedly created a computer-generated renewal application on behalf of Plaintiff for the Policy, which stated the Property had no damage and was occupied. (*Id.* at 7.) On or about July 29, 2021, Defendants informed Plaintiff the First Fire claim had been processed and sent her a check for $184,002.19. (*Id.*) Between October 2021 and February 2022, Defendants requested various documents from Plaintiff: tax returns; property tax records; cell phone records; financial account statements; loan or credit records; and all records from the past three years relating to real estate, litigation, bankruptcy, income, and employment. (*Id.* at 8–9.) At Defendants' request, Plaintiff

---

[1] The Complaint alleges the Second Fire occurred in 2023. (ECF No. 1 at ¶¶ 27.) However, based on the timeline presented, that date appears to be an error. The Court assumes Plaintiff intended to allege the Second Fire occurred in 2021.

2

1  also participated in an examination under oath, outside the presence of counsel. (*Id.* at 9.) On
2  February 18, 2022, Defendants notified Plaintiff they would not pay her Second Fire claim or
3  vandalism claim. (*Id.*) Defendants' alleged basis for denying the claims was that the renewal
4  application from March 15, 2021, falsely stated the Property had no damage and was occupied.
5  (*Id.* at 7.)

6  Plaintiff filed the operative Complaint on August 1, 2023, alleging claims for: (1) breach
7  of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intrusion into
8  private affairs; and (4) declaratory relief. (ECF No. 1.) Defendants filed the instant motion to
9  dismiss on September 9, 2023. (ECF No. 9.)

10    **II.    STANDARD OF LAW**

11  A motion to dismiss for failure to state a claim upon which relief can be granted under
12  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.
13  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain
14  "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.
15  Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in
16  federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the
17  grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal
18  citation and quotations omitted). "This simplified notice pleading standard relies on liberal
19  discovery rules and summary judgment motions to define disputed facts and issues and to dispose
20  of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

21  On a motion to dismiss, the factual allegations of the complaint must be accepted as true.
22  *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every
23  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail*
24  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege
25  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to
26  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

27  Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of
28  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

1    While Rule 8(a) does not require detailed factual allegations, "it demands more than an
2    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A
3    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the
4    elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678
5    ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory
6    statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences
7    are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355
8    F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the
9    plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws
10   in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*
11   *Council of Carpenters*, 459 U.S. 519, 526 (1983).

12   Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
13   facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim
14   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
15   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
16   680. While the plausibility requirement is not akin to a probability requirement, it demands more
17   than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility
18   inquiry is "a context-specific task that requires the reviewing court to draw on its judicial
19   experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or
20   her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly
21   dismissed. *Id.* at 680 (internal quotations omitted). If a complaint fails to state a plausible claim,
22   "[a] district court should grant leave to amend even if no request to amend the pleading was
23   made, unless it determines that the pleading could not possibly be cured by the allegation of other
24   facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).
25   ///
26   ///
27   ///
28   ///

**III.   ANALYSIS**

Defendants move to dismiss: (1) the intrusion into private affairs claim (Claim Three); (2) the fraud allegations throughout the Complaint; and (3) the request for punitive damages. (ECF No. 9-1 at 6.)  The Court will address each of these arguments in turn.

### A.   Intrusion into Private Affairs Claim

An intrusion into private affairs claim has two elements: "(1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  As to the first element, "the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." *Id.* at 232.  "The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.*  As to the second element, "determining offensiveness requires consideration of all the circumstances of the intrusion, including its degree and setting and the intruder's motives and objectives." *Id.* at 236 (citation and internal quotation marks omitted).  Whether a defendant's conduct was highly offensive to a reasonable person is a question of fact. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) ("The ultimate question of whether Facebook's tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage.").

Defendants contend Plaintiff fails to allege sufficient facts to state a claim.[2]  (ECF No. 9-1 at 10–14.)  Rather than provide clear, distinct arguments for each element, Defendants present overlapping arguments for both elements.  Specifically, Defendants argue requests for an examination under oath ("EUO") and/or relevant documents are common during investigations of insurance claims.  (*Id.* at 11.)  Defendants further argue it was especially reasonable to investigate

---

[2]   Without citing any authority, Defendants also argue Plaintiff's intrusion into private affairs claim is duplicative to Plaintiff's insurance bad faith claim.  (ECF No. 9-1 at 13.)  Defendants' argument is unpersuasive.  Plaintiff's Complaint alleges bad faith arising from "Defendant's failure to pay the Policy benefits."  (ECF No. 1 at 13.)  In contrast, the Complaint alleges intrusion into private affairs arising from Defendants "forcing [Plaintiff] to produce… documents."  (*Id.*)  Because they are based on distinct harms, the claims are not duplicative.

5

1 Plaintiff's claims due to the number of losses occurred at the Property within a short time, which
2 raised suspicion about the claims being false or fraudulent. (*Id.* at 12.) Lastly, Defendants note
3 that Plaintiff produced the requested information by her own volition. (*Id.*) In opposition,
4 Plaintiff contends California protects a privacy right to records, such as the cell phone records, tax
5 records, and bank records that Defendants improperly demanded in this case. (ECF No. 13 at 12.)

6        Neither party cites authority directly on point as to whether Plaintiff can assert a viable
7 intrusion into private affairs claim based on Defendants' request for Plaintiff's personal
8 information. Defendants rely on *Brizuela v. CalFarms Ins. Co.*, 116 Cal. App. 4th 578 (2004),
9 and *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1 (1995). (ECF No. 9-1 at 11–12.) Both cases
10 are distinguishable from the instant case. First, Defendants cite *Brizuela* for the general
11 contention that an insured must comply with policy requirements to submit an EUO before
12 receiving benefits under the policy. (*Id.*) However, *Brizuela* was decided on a motion for
13 summary judgment and involved a breach of contract claim, not an intrusion into private affairs
14 claim. 116 Cal. App. 4th at 587. Defendants fail to present meaningful analysis to persuade the
15 Court that *Brizuela* has any bearing on the instant case.

16        Defendants next cite *Waller* to support the proposition that an insurance company's
17 request for documents from an insured is objectively reasonable considering that insureds are
18 obligated to demonstrate policy coverage in the first instance. (ECF No. 9-1 at 12.) At issue in
19 *Waller* was whether an insurance company had a duty to defend the plaintiff under the language
20 of the insurance policy. 11 Cal. 4th at 20. In the portion of the opinion Defendants cite, the
21 *Waller* court simply explained that a plaintiff bears the burden to show an insurance policy
22 provides coverage. *Id.* As with *Brizuela*, Defendants fail to provide meaningful analysis to
23 persuade the Court that *Waller* is relevant here.

24        Plaintiff's analysis is similarly deficient. Plaintiff string cites various cases to support the
25 broad proposition that California law protects a privacy right to records. (ECF No. 13 at 12
26 (citing *Williams v. Super. Ct.*, 3 Cal. 5th 531 (2017); *Saunders v. Superior Ct.*, 12 Cal. App. 5th
27 Supp. 1 (2017); *People v. McKunes*, 51 Cal. App. 3d 487 (1975); *Webb v. Standard Oil Co.*, 49
28 Cal. 2d 509 (1957)).) However, all the cited cases appear to be distinguishable from the instant

1  case.  In short, *Williams* involved a discovery dispute, *Saunders* involved public disclosure of
2  records to media, *McKunes* involved investigation by a state agent, and *Webb* involved an issue
3  about a court mandated disclosure.  *Williams*, 3 Cal. 5th at 538; *Saunders*, 12 Cal. App. 5th Supp.
4  at 4; *McKunes*, 51 Cal. App. 3d at 490; *Webb*, 49 Cal. 2d at 513–14.  None of the cases involved
5  an insurance company requesting records from an insurer, nor did they involve a cause of action
6  for intrusion into private affairs.

7  Based on the extremely limited arguments before the Court, Defendants ultimately fail to
8  persuade the Court that Plaintiff's intrusion into private affairs claim should be dismissed.  The
9  thrust of Defendants' arguments seems to be that their investigation was reasonable as a matter of
10  law.  However, such arguments are premature at the pleading stage.  In the Complaint, Plaintiff
11  alleges Defendants forced her to disclose her private affairs to have her claim processed.  (ECF
12  No. 1 at 14.)  More specifically, Plaintiff alleges Defendants forced her to produce tax returns,
13  cell phone records, bank records, income records, property records (unrelated to the claim at
14  issue), credit records, and other financial records, which had "little to nothing" to do with her
15  claim, in order to harass and place unreasonable hurdles on Plaintiff.  (*Id.* at 13.)  Plaintiff also
16  alleges as a result she suffered "severe emotional distress, which aggravated her existing medical
17  conditions."  (*Id.* at 14.)  Taking Plaintiff's allegations as true and drawing all reasonable
18  inferences in her favor, the Court finds Defendants' allegedly improper requests for Plaintiff's
19  personal information could be considered "unwanted access to data" about Plaintiff that would be
20  highly offensive to a reasonable person.  *Shulman*, 18 Cal. 4th at 231; *In re Facebook, Inc.*
21  *Internet Tracking Litig.*, 956 F.3d at 606.

22  Accordingly, the Court concludes Plaintiff has plausibly alleged her intrusion into private
23  affairs claim.

24     B.  Fraud Allegations Throughout the Complaint

25  Defendants next argue Plaintiff's fraud allegations fail to meet the heightened pleading
26  requirements of Rule 9(b).  (ECF No. 9-1 at 14.)  Defendants contend Plaintiff's allegations about
27  her automatic, computer-generated policy renewal application do not rise to the level of fraud.
28  (ECF No. 9-1 at 16.)  Defendants also argue Plaintiff fails to identify the names, titles, or job

7

responsibilities of any employees or agents who had anything to do with the allegedly fraudulent policy renewal application.  (*Id.*)  In opposition, Plaintiff argues Rule 9(b) does not apply because she has not alleged a separate fraud claim.  (ECF No. 13 at 14.)  However, Plaintiff argues her allegations nonetheless satisfy Rule 9(b).  (*Id.*)

A claim grounded in fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A court may dismiss a claim for failing to satisfy Rule 9(b)'s heightened pleading requirements.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Under this heightened pleading standard, a party must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson v. Kimberly–Clark*, 889 F.3d 956, 964 (9th Cir. 2018)).  The complaint must contain enough detail to put a defendant on notice of the alleged misconduct so they may "defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106.

Assuming without deciding that Rule 9(b) applies to Plaintiff's allegations about fraud despite the lack of a distinct fraud claim, the Court concludes Plaintiff's allegations satisfy Rule 9(b).  Put simply, Plaintiff alleges that from October 2021 to February 2022, Defendants devised a scheme to deny Plaintiff's second and third insurance claims by fabricating a policy renewal application which falsely reflected that Plaintiff indicated the Property had no damage and was occupied at the time of renewal.  (ECF No. 1 at 7.)  Plaintiff alleges Defendant knew the application was false because: (1) the application was automatic and computer-generated and therefore not based on Plaintiff's representations; and (2) Defendants were aware the Property was damaged and unoccupied due to the First Fire claim which was already in process at the time of renewal.  (*Id.*)  Absent meaningful argument from Defendants to the contrary, the Court finds these allegations are sufficient to put Defendants on notice of their allegedly fraudulent misconduct.

Accordingly, the Court DENIES Defendants' motion to dismiss under Rule 9(b).

///

C.  Punitive Damages

Finally, Defendants move to dismiss Plaintiff's request for punitive damages. (ECF No. 9-1 at 17–18.) However, "a motion to dismiss is not the proper vehicle to challenge a claim of damages." *Trull v. City of Lodi*, No. 2:23-cv-01177-TLN-CKD, 2024 WL 1344478, at *8 (E.D. Cal. Mar. 29, 2024); *see Oppenheimer v. Sw. Airlines Co.*, No. 13-CV-260-IEG BGS, 2013 WL 3149483, at *3 (S.D. Cal. June 17, 2013) ("Because punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007) ("[A] complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law.").

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's request for punitive damages.

**IV.  CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss. (ECF No. 9.) Defendants shall file an answer not later than twenty-one (21) days from the electronic filing date of this Order.

IT IS SO ORDERED.

Date: September 30, 2024

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE