UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>SPINNAKER INSURANCE COMPANY, et al.,<br><br>Defendants. | No.  2:23-cv-01582-TLN-SCR<br><br><br><br>ORDER |

Before the court is Plaintiff's amended motion to compel further responses to Requests for Production of Documents ("RFP"), Interrogatory No. 3, and Requests for Admissions ("RFA") from Defendant Hippo Analytics Inc. dba Hippo Insurance Services ("HIPPO"), filed March 7, 2025.  ECF No. 35.  The parties initially submitted inconsistent versions of their joint statement. ECF Nos. 37, 40.  After the Court struck these, the parties filed a single joint statement on April 16, 2025.  ECF Nos. 43-44.  The Court heard arguments on this motion on April 24, 2025.  ECF No. 50.[1]  The Court now grants in part, and denies in part, the Motion to Compel as follows.

////

---

[1] Plaintiff requested sanctions based on Defendant's filing of a second version of the joint statement.  ECF No. 42.  The Court heard this motion as well but denied it, having already stricken this second version of the joint statement from the record.  ECF No. 50.  The Court also heard arguments regarding Defendants' motion to compel further disclosures from Plaintiff regarding damages (ECF Nos. 36, 50), and issued a separate order regarding that motion.

1

**INTRODUCTION**

This case arises from an insurance coverage dispute. Plaintiff owns a property at 9005 Calvine Road, Sacramento, California (the "Property"). ECF No. 1 at 2. Defendants are home insurance providers. *Id.* at 3. On June 23, 2020, Defendants issued Plaintiff a landlord home insurance policy for the Property, covering the period of June 23, 2020, to June 23, 2021 (the "Policy"). *Id.* at 3. The Policy states that it "renews automatically on each anniversary." *Id.* at 4. In relevant part, the Policy covers: (1) loss by fire that is not arson by the insured; (2) theft; and (3) vandalism. *Id.*

There are three distinct insurance claims at issue in this case. First, on or about January 25, 2021, a fire broke out at the Property (the "First Fire"). *Id.* at 5. The First Fire was allegedly not a result of arson by the insured and was not a total loss. *Id.* Plaintiff filed a timely claim with Defendants. *Id.* Second, on or about July 4, 2021, the Property was vandalized. *Id.* at 6. The vandalism included removal of boards that had been installed around the property and damage to the garage door. *Id.* Plaintiff again filed a timely claim with Defendants. *Id.* Third, on or about August 2, 2021,[2] another fire occurred at the Property (the "Second Fire"). *Id.* The Second Fire was allegedly not a result of arson by the insured and this time resulted in a total loss. *Id.* Plaintiff again filed a timely claim with Defendants. *Id.*

On March 15, 2021, after the First Fire claim but before the vandalism claim, Defendants allegedly created a computer-generated renewal application on behalf of Plaintiff for the Policy, which stated the Property had no damage and was occupied. *Id.* at 7. On or about July 29, 2021, Defendants informed Plaintiff the First Fire claim had been processed and sent her a check for $184,002.19. *Id.* Between October 2021 and February 2022, Defendants requested various documents from Plaintiff: tax returns; property tax records; cell phone records; financial account statements; loan or credit records; and all records from the past three years relating to real estate, litigation, bankruptcy, income, and employment. *Id.* at 8–9. At Defendants' request, Plaintiff

---

[2] The Complaint alleges the Second Fire occurred in 2023. ECF No. 1 at ¶ 27. However, based on the timeline presented, that date appears to be an error. The Court assumes Plaintiff intended to allege the Second Fire occurred in 2021.

2

1   also participated in an Examination Under Oath, outside the presence of counsel. *Id.* at 9. On
2   February 18, 2022, Defendants notified Plaintiff they would not pay her Second Fire claim or
3   vandalism claim. *Id.* Defendants' alleged basis for denying the claims was that the renewal
4   application from March 15, 2021, falsely stated the Property had no damage and was occupied.
5   *Id.* at 7.

6       Plaintiff filed the operative Complaint on August 1, 2023, alleging claims for: (1) breach
7   of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intrusion into
8   private affairs; and (4) declaratory relief. ECF No. 1. Defendants filed a motion to dismiss on
9   September 9, 2023. ECF No. 9. On September 30, 2024, Chief District Judge Troy L. Nunley
10  denied the motion to dismiss. ECF No. 22.

11      Plaintiff propounded the RFAs at issue in this motion on November 8, 2024 (ECF No. 44-
12  1 at 23), and the RFPs and Interrogatories on November 25, 2024 (*Id.* at 156, 164). HIPPO
13  served answers to all three forms of discovery on January 10, 2025. *Id.* at 293, 317, 335.
14  Plaintiff sent meet-and-confer letters on February 13 and 18, 2025. *Id.* at 339, 348. After meet-
15  and-confer efforts, Defendant served, inter alia, amended responses to the RFPs on February 26,
16  2025. *Id.* at 396. Defendants also served a privilege log on March 6, 2025. ECF Nos. 44 at 7,
17  44-1 at 400-19.

## LEGAL STANDARDS

19      As a general rule, discovery may be obtained regarding "any nonprivileged matter that is
20  relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ.
21  P. 26(b)(1). Courts can limit discovery when:

> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

26  Fed. R. Civ. P. 26(b)(2)(C). Courts can also issue protective orders "to protect a party or person
27  from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P.
28  26(c)(1). Such an order can, *inter alia*, forbid disclosure or discovery, specify terms and

conditions thereof, limit the scope to certain matters or prohibit discovery as to certain matters, and prohibit the parties from sharing confidential commercial information or limit how they do so. Fed. R. Civ. P. 26(c)(1)(A), (B), (D), (G).

### A. Requests for Production of Documents

RFPs ask a party to "produce and permit the requesting party or its representative to inspect, copy, test, or sample…items in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). For such purposes, documents are in the responding party's "control" if the party has "the legal right, authority, or practical ability to obtain the materials sought upon demand[,]" like from an affiliate corporation. *U.S. Intern. Trade Commission v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005) (quoting *Camden Iron & Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991)); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471-72 (S.D.N.Y. 2000).

Responsive documents include "any designated documents or electronically stored information…stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]" Fed. R. Civ. P. 34(a)(1)(A). In general, however, a party need not produce electronically stored information from sources that are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). If the responding party shows this is the case, the court may still order discovery and set conditions thereof if the propounding party shows good cause, in light of the limitations in Fed. R. Civ. P. 26(b)(2)(C). Fed. R. Civ. P. 26(b)(2)(B).

Any objections to a request must state whether any responsive materials were withheld as a result, and the propounding party must permit inspection of any responsive documents not withheld based on such objections. Fed. R. Civ. P. 34(a)(2)(C).

### B. Interrogatories

"[T]to the extent it is not objected to," every interrogatory must "be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "An interrogatory response must be complete in itself, explicit, and responsive[,]" but whether a particular response meets this standard "must be analyzed on a case-by-case basis in light of the particular question being

4

asked." *V5 Technologies v. Switch, Ltd.*, 334 F.R.D. 297, 305 (D. Nev. 2019). As with RFPs, any objections "must be stated with specificity." Fed. R. Civ. P. 33(b)(4).

### C. Requests for Admission

RFAs may ask a party to admit the truth of "facts, the application of law to fact, or opinions about either" or "the genuineness of any described documents." Fed. R. Civ. P. 36 (a)(1). If the party's response does not admit the truth of such an RFA:

> the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36 (a)(4).

### D. Motions to Compel

A propounding party may move for an order compelling a party to answer an interrogatory or produce documents responsive to an RFP if it fails to do so. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). A discovery response that is evasive or incomplete constitutes a failure to respond. Fed. R. Civ. P. 37(a)(4). Propounding parties may also move for a determination of the sufficiency of an answer or objection to RFAs. Fed. R. Civ. P. 36(a)(6). If a court does not find the RFA answer compliant with the Federal Rules, it may either treat the RFA as admitted or order the party to file a supplemental answer. *Id.*

### E. New Privilege

The Federal Rules of Evidence provide that whether a type of evidentiary privilege exists hinges on "common law—as interpreted by United States courts in the light of reason and experience" unless the United States Constitution, federal statute, or Supreme Court rulings say otherwise. Fed. R. Evid. 501. When "state law supplies the rule of decision" in a civil case, however, state law governs whether a privilege exists. *Id.*

////

5

Under the California Evidence Code, "[n]o person has a privilege to refuse to disclose any matter or to refuse to produce any writing, object, or other thing" unless statute provides otherwise. Cal. Evid. Code § 911(b). Unlike under federal law, courts have no authority to create new privileges through judicial policy. *Cloud v. Superior Court*, 50 Cal.App.4th 1552, 1558–59 (Cal. Ct. App. 1996); *American Airlines, Inc. v. Superior Court*, 114 Cal.App.4th 881, 887 (Cal. Ct. App. 2003). Courts "may imply a privilege under statutes…only if the statutory language and legislative history plainly demonstrate the [California] Legislature's intent to create such a privilege." *American Airlines*, 114 Cal.App.4th at 889. The burden of establishing that a privilege applies rests with the party asserting one. *Id.* at 887.

### ANALYSIS[3]

**A. Motion to Compel Further Responses to RFPs**

**1. Scope of Production and General Objections**

Grounds for objection must be stated with specificity, and general objections are therefore waived. *See Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D. Cal. 2005) (citing *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981)). Defendant HIPPO has produced thousands of pages of documents responsive to the RFPs. *See* ECF No. 44 at 12. HIPPO conceded during the hearing that some of the objections in its discovery responses were general objections that did not affect the scope of production. The parties may assume that the Court has overruled any objection not discussed in this Order as too general to merit consideration.

**2. HIPPO's Identity**

HIPPO argues that its discovery answers are limited by the fact that it did not issue either of the policies in this case. ECF No. 44 at 4-5. Topa Insurance Company ("Topa"), a nonparty to this action, issued the 2020 policy covering the claim for the First Fire. *Id.* A successor policy was then issued by Defendant Spinnaker Insurance Company ("Spinnaker") on June 23, 2021. *Id.* at 5. HIPPO merely served as the general managing agent, performing select services under both policies. *Id.* Meanwhile, the RFPs defined the term "YOU" as:

---

[3] All discovery requests at issue are identified in the joint statement for this motion. ECF No. 44. Due to their numerosity, they are reproduced in this order only as necessary.

>Defendant Hippo Analytics Inc. dba Hippo Enterprises Inc. dba Hippo Insurance Services, and shall include their officers, directors, principals, employees, personnel, contractors, attorneys, accountants, agents, representatives, subsidiaries, affiliates, policy underwriters, including Spinnaker Insurance Company, and/or anyone acting or purporting to act on their behalf.

ECF No. 44-1 at 152. HIPPO argues that because this definition was overly broad, it chose to answer on its own behalf while asserting a broad range of objections to protect those for whom it did not have the authority to speak. ECF No. 44 at 9. HIPPO added during the hearing that it still produced everything in its possession, including documents originating from Spinnaker and Topa, provided the originating company gave permission to disclose each document.

Plaintiff's counsel responded during the hearing that the RFPs use a broad definition of "YOU" because he needs enough information to understand which entity was responsible a given action or omission– something that HIPPO already knows. He also notes that HIPPO still collected the insurance premiums under Topa's policy and communicated with Plaintiff about the investigation into Property claims.

The Court agrees that HIPPO's involvement in the First Fire claim means that it would have at least some documents responsive to related RFPs. As to the successor policy, Plaintiff attached to her RFAs notice that the policy was thenceforth "underwritten by Spinnaker…a wholly-owned subsidiary of Hippo Enterprises Inc." ECF No. 44-1 at 100. When combined with HIPPO's involvement in subsequent claims, this again suggests that HIPPO may at least have the "practical ability" to obtain relevant documents from Spinnaker, to the extent that HIPPO does not already possess such documents. *See U.S. Intern. Trade Commission*, 411 F.3d at 254. Such documents would therefore be in HIPPO's control. *See id.*; Fed. R. Civ. P. 34(a)(1).

Any objection based on Spinnaker and Topa's confidential information, or on any fiduciary duty HIPPO asserts as to either one, lacks merit. Courts may issue protective orders to limit whether and how the parties share confidential information. Fed. R. Civ. P. 26(c)(1)(G). A protective order has been issued in this case, and the parties should stipulate to amend it to the extent that it does not already protect Topa and HIPPO's confidential information in any responsive documents. *See*

////

7

1  ECF No. 33. Such concerns do not justify completely withholding information and documents that
2  are otherwise relevant to the case.

### 3. Limiting the Search to the Claim File

Plaintiff initially objected to the responses to RFP Nos. 1 and 24, where HIPPO produced "non-privileged, nonprotected portions of the claim file" responsive to the requests. ECF No. 44 at 17-18. Because RFP No. 1 requests "All DOCUMENTS in the POLICY claim file regarding the claim nos.…", Plaintiff has since conceded that HIPPO did not improperly narrow the scope thereunder. *Id.* at 17. At issue is RFP No. 24, which seeks "All DOCUMENTS and records reflecting all PAYMENTS made to YOU by Dr. Sheikh." *Id.*

HIPPO initially argued that Plaintiff did not articulate why she believes anything responsive to RFP No. 24 exists outside the claim file when the RFP seeks documents pertaining to adjudication of those claims. *Id.* Plaintiff's counsel responded during the hearing that these files should include payment records to prove Sheikh did make payments required under her policy, yet HIPPO did not produce them. HIPPO responded that even the joint statement includes documents referencing such payments, which would suffice for such purposes. *See* ECF No. 44-1 at 102. This does not exempt HIPPO from producing any other version of such payment records that may exist.

HIPPO correctly argued that such payment records may be in Topa's possession, as the insurance carrier under the original policy. HIPPO is ordered, however, to search its records again for any copy of such payment records. If such records are in its possession or control, HIPPO must produce them notwithstanding any fiduciary duty it may owe Topa. *See supra* A.2.

### 4. Policy Renewal

RFP No. 26 concerns "YOUR practice of automatically renewing insurance policies in the manner the POLICY in this case was automatically renewed." ECF No. 44 at 10. HIPPO reiterates its arguments that it produced all responsive documents in the claim file, and that the RFP was overbroad due to how Plaintiff defined "YOU." *Id.* at 11-12 (citing *Id.* at 4-6).

The requested records may exist outside the claims file, since they pertain to more general practices, as opposed to Plaintiff's case exclusively. Accordingly, HIPPO must perform a reasonable search beyond the claim file for responsive records. Moreover, HIPPO was the

8

Defendant who notified Plaintiff that her renewed policy was underwritten by Spinnaker instead of Topa. *See* ECF No. 44-1 at 100. To the extent that HIPPO facilitated such renewal, it must produce any records of instructions or practices that Spinnaker told HIPPO to follow. As discussed above, any concerns that these documents would involve confidential business information for entities other than HIPPO does not justify withholding such documents. *See supra* A.2. The Court orders HIPPO to perform a search for responsive records beyond the claim file and to produce such records.

**5. No Privilege Under State Law**

HIPPO served a privilege log on March 6, 2025, after the parties had exchanged the original meet and confer letters for this motion. ECF Nos. 44 at 16, 44-1 at 400-19. By the time of the hearing, subsequent meet and confer efforts had limited the objections raised in the log to three issues: relevance, confidentiality of third-party information, and a privilege asserted under 10 Cal. Code Reg. ("C.C.R.") §§ 2695.7(b)(2), (c)(2). *See, e.g.,* ECF No. 44-1 at 400. The Court finds the first objection too vague to hold any merit and has rejected the second objection as outlined above. *See supra* A.2. At issue is whether the cited regulations create an evidentiary privilege applicable to the documents in this case.

Acceptance or denial of a claim usually must be within 40 calendar days of the claim. 10 C.C.R. § 2695.7(b). An insurer who denies or rejects a first part claim must list in writing "all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is then within the insurer's knowledge." 10 C.C.R. § 2695.7(b)(1). However, 10 C.C.R. § 2695.7(b)(2) clarifies that this regulation does not require the insurer "to disclose any information that could reasonably be expected to alert a claimant to the fact that the subject claim is being investigated as a suspected fraudulent claim." This also applies if the insurer instead notifies the claimant that it needs additional time to make a determination on the claim, and gives additional notice every 30 calendar days thereafter. *See* 10 C.C.R. §§ 2695.7(c)(1)-(2). HIPPO argues that based on these regulations, even though it must now reveal the evidence used to ultimately conclude that Plaintiff had committed fraud when renewing the policy, it need not disclose the techniques used during the investigation.

9

1    Courts have no authority to create privileges in civil actions raised under California law, and they may only find that a statute implies a privilege where the "the statutory language and legislative history plainly demonstrate" the state legislature sought to create one. *American Airlines*, 114 Cal.App.4th at 887, 889. The cited regulations concern disclosures an insurer need not make to a claimant to protect the secrecy of an ongoing investigation into possible fraud. 10 C.C.R. §§ 2695.7(b)-(c). This does not imply any such privilege exists after such an investigation has concluded or after the claim has already been denied, as here.

HIPPO has failed to demonstrate that any privilege exists under 10 C.C.R. § 2695.7, and therefore that any objections raised in the privilege log have merit. HIPPO is ordered to produce all documents and/or information identified within the privilege log that were withheld on the basis of relevance, confidentiality of third-party information, or under 10 §§ 2695.7(b)(2), (c)(2), subject to designations under the protective order in effect in this case.

### 6. Conclusion

HIPPO is ordered to produce any documents in its possession, custody, or control that are responsive to RFP Nos. 1-29, without regard to which company they originated from or whose confidential information they may obtain. This includes unredacted copies of all documents identified in the privilege log that fall within the categories described above; any documents concerning practices and/or instructions concerning renewal of insurance policies (including specific instructions concerning renewal of the policy on the Property in June 2021); and any payment records under Plaintiff's policies upon an additional search for such records.

### B. Interrogatory No. 3.

The Interrogatory at issue in the motion asks HIPPO to:

> Reviewing the NOTICE OF AUTOMATIC RENEWAL… YOU sent to Dr. Sheikh informing her, among other things, that her policy would be renewed automatically, her card on file would be charged, and no action on her part was necessary, describe with particularity YOUR entire process for automatically renewing policies like the POLICY at issue here, as of the time YOU sent the Notice….

ECF No. 44 at 18 (citing ECF No. 44-1 at 100). HIPPO only replied with objections, including that the request was "vague, ambiguous, compound and overbroad as phrased" due to the

1  definition of "YOU."[4]  ECF No. 44 at 18.  HIPPO asserts in the joint statement that it is a separate
2  entity from Hippo Enterprises, Inc., of which Spinnaker is a subsidiary.  *Id.* at 19; ECF No. 44-1 at
3  100.  HIPPO concludes that it therefore cannot respond on behalf of Spinnaker or Hippo
4  Enterprises, nor can Plaintiff ask HIPPO to speculate as to what their responses would be.  ECF
5  No. 44 at 19.
6        This does not explain why HIPPO did not answer the question by at least detailing its own
7  renewal policy.  HIPPO's duty to answer "separately and fully" includes answering the
8  interrogatory to the extent that it can, while explaining why it cannot answer as to any other party.
9  *See* Fed. R. Civ. P. 33(b)(3).  HIPPO conceded at the hearing that it can provide such a compound
10  answer, separated by Defendant.  In this regard, the motion to compel a further response to
11  Interrogatory No. 3 is granted.

12  **C. Requests for Admissions**

13        RFA No. 1 asked HIPPO to admit that it issued the Property's initial policy on June 23,
14  2020.  ECF No. 44 at 22.  Despite objections, HIPPO admitted it issued the policy but denied "to
15  the extent that the request assumes, indicates, implies or suggests that Responding Party underwrote
16  the POLICY or is otherwise a contracting party to the POLICY."  *Id.* at 22-23.  This adequately
17  answers the question raised in the RFA via admission.  Plaintiff's motion to compel a further
18  response to it is denied.
19        RFA Nos. 7-9 concern the terms of coverage under the original policy, as well as the
20  inspection conducted soon after it was issued.  *Id.* at 23-26.  HIPPO refused to answer, again
21  because it was not a party to this policy.  *Id.* at 23-27.  Because HIPPO has admitted it was the
22  general managing agency for the policy, however, it can still answer for itself based on whatever
23  knowledge it garnered in that capacity.  As with Interrogatory No. 3, HIPPO must provide a
24  qualified admission or denial based on its own knowledge, asserting "lack of knowledge" only to

---

[4] HIPPO also objected that the Notice of Automatic Renewal was not attached to the interrogatories as Plaintiff asserted.  ECF No. 44 at 18.  The parties now seem to agree that the Interrogatory referred to the Notice of Automatic Renewal attached as Exhibit 4 to the RFAs.  ECF No. 44-1 at 100.

11

the extent that it cannot speak on behalf of other entities like Topa. *See supra* B; Fed. R. Civ. P. 36(a)(4).

RFA No. 10 concerns when Plaintiff filed a claim for the First Fire. ECF No. 44 at 27-28. HIPPO responded only with objections and did not explain their merit. *Id.* at 28-29. HIPPO must answer based on its own knowledge.

RFA Nos. 12, 14, 16, 24, and 33-34 concern the investigation into the First Fire, whether the damage was covered by insurance, and when Plaintiff received funds under that claim. *Id.* at 29-36. HIPPO denied all but RFA No. 24 as a non-party to the policy, while saying the "overbreadth and compound nature" of the RFAs prevented an admission, and did not respond to RFA No. 24 beyond objections. *Id.* at 29-38. As with RFA Nos. 7-9, HIPPO must provide a supplemental admission or denial that distinguishes between the parties included in the definition of "YOU" and admits or denies each RFA on HIPPO's own behalf.

RFA No. 39 asks whether "YOU" confirmed via email Plaintiff's $169.70 payment towards "the POLICY[.]" ECF No. 44 at 38. HIPPO denied, arguing this was for the renewed policy with Spinnaker and not the original policy with Topa. *Id.* Although Plaintiff objects that this answer rewrites the RFA (*see Id.* at 39), the answer does concede that Plaintiff paid the asserted amount towards the policy. HIPPO's distinction between policies is irrelevant because Plaintiff has argued that Spinnaker's policy was an automatic continuation of the original policy. See *Id.* at 2. The motion to compel a further response to this RFA is denied. To the extent that the answer is deficient, the Court exercises its authority to interpret it as an admission. *See* Fed. R. Civ. P. 36(a)(6).

RFA Nos. 42 and 46-47 concern whether the original policy was "renewed automatically," without an additional application from Sheikh, and if Sheikh timely made payments thereunder until HIPPO cancelled it for other reasons. ECF No. 44 at 39-42. HIPPO "admit[ted]" each RFA but hinged each admission "on Plaintiff's payment of the increased policy premium[.]" *Id.* at 40-42. Although HIPPO asserted at the hearing that this adds a caveat to each admission, the Court reads this as an extraneous explanation of the admissions. The substance of each RFA was admitted, albeit with a reminder for Plaintiff not to interpret the admission more broadly than the text of such RFA allows. The motion to compel further responses is denied.

12

HIPPO denied RFA Nos. 48-52 "to the extent the request indicates [Plaintiff] filed a subsequent claim on July 6, 2021 under the original policy[.]" *Id.* at 43-46, 49-50; ECF No. 44-1 at 213-214.[5] In RFA No. 41, however, Plaintiff noted that the word "POLICY" thereafter referred to the insurance policy "which was renewed on or about June 23, 2021[.]" ECF No. 44-1 at 12. To the extent that either party considered Spinnaker's 2021 policy distinct from Topa's 2020 policy, HIPPO had no reason to believe subsequent RFAs referred to the earlier of the two. The motion to compel further responses to these RFAs is granted.

HIPPO's denial of RFA No. 54, in contrast, adequately explained why it had reason to believe "that the damage to the PROPERTY from the FIRST FIRE had been repaired." ECF NO. 44 at 51-52. HIPPO believed Plaintiff had repaired the damage because the policy required her to "protect the property from further loss and damage." *Id.* at 52. Whether this actually implied a duty to repair the Property from damage already suffered is irrelevant, provided HIPPO thought it might. The motion to compel a further response to this RFA is denied.

HIPPO reserved the right to refrain from answering RFA Nos. 55-56, about when the Second Fire occurred and whether the claim for it was timely, pending further discovery. *Id.* at 53-54. Plaintiff asks how HIPPO can claim ignorance when it denied Plaintiff's claim based on its previous investigation. *Id.* at 53. Although HIPPO must have based this denial on some belief as to the timeline of events, it is entitled to account for some margin of error in its investigation by not committing to this timeline until discovery is complete. The motion to compel further responses is denied as to these RFAs, though HIPPO must amend these responses once it has sufficient information to admit or deny them.

Although HIPPO gave the same response to RFA Nos. 58 and 60-61, it is not adequate as to those RFAs. *Id.* at 55-56, 57-58; ECF No. 44-1 at 221-222.[6] They concern what HIPPO, along with the rest of "YOU[,]" believed upon completion of the initial investigation. ECF No. 44 at 55-57. Additional discovery will neither change nor reveal anything about HIPPO's past state of mind

---

[5] The relevant portion of HIPPO's response to RFA No. 51 was inadvertently omitted from the joint statement. ECF No. 44 at 48-49.

[6] The relevant portion of HIPPO's response to RFA No. 60 was inadvertently omitted from the joint statement. ECF No. 44 at 56-57.

that it does not already know.  HIPPO is ordered to admit or deny these RFAs in its own capacity, and to respond as to any other entity of which it has the requisite knowledge.

When asked in RFA No. 64 if it informed Plaintiff it would "process" her claim for the Second Fire, HIPPO instead admitted that it "issued a letter to acknowledge Plaintiff's report of" the claim.  *Id.* at 59.  As Plaintiff notes, whether an entity acknowledges a claim does not answer whether it agrees to process one.  *Id.*  HIPPO is ordered to directly admit or deny this RFA on its own behalf.

RFA No. 76 concerns what information HIPPO demanded Plaintiff provide in an October 25, 2021 letter.  *Id.* at 60.  HIPPO only responded that this letter "speaks for itself."  *Id.* at 61.  The Court agrees with Plaintiff that this assertion, without admitting or denying the request or stating that it cannot either admit or deny, is "simply evasive and therefore insufficient."  *Id.*; *FDIC v. Halpern*, 271 F.R.D. 191, 195 (D. Nev. 2010).  HIPPO is ordered to directly admit or deny this RFA on its own behalf.

RFA Nos. 77-78 ask whether Defendants' counsel told Plaintiff that they would not process the claim for the Second Fire unless she provided the information outlined in the letter and appeared for an "Examination Under Oath[.]"  ECF No. 44 at 61-63.  HIPPO admitted both but explained its decision to demand such information and examination.  *Id.* at 62-64.  Unlike the responses to RFA Nos. 42 and 46-47, this conditional language may undermine the clarity of the admissions and obscure their relevance to the current action.  HIPPO is ordered to directly admit or deny these RFAs, without caveats as to any admission.  Should HIPPO fail to do so, the Court may exercise its authority to interpret the existing responses as complete admissions.  *See* Fed. R. Civ. P. 36(a)(6).

RFA No. 85 asks if one of the documents attached to the RFAs was a "copy of the alleged renewal application" in June 2021.  ECF No. 44 at 64.  HIPPO denied it was "alleged" but admitted it was a renewal application, arguing that Plaintiff accepted it by paying insurance premiums under the renewed plan.  *Id.* at 65.  This conditional admission is reasonable because later RFAs seek to

////

////

////

establish that HIPPO made the document itself, whereas the policy renewal was automatic.[7] *See id.* at 67, 69. The motion to compel further response to this RFA is denied.

RFA Nos. 88-89 again ask what HIPPO knew as of a past point in time, Plaintiff's Examination Under Oath. *Id.* at 66-67. As with RFA Nos. 58 and 60-61, HIPPO's argument that discovery will reveal more about their prior state of mind fails. *See id.* at 66, 68. The motion to compel further responses is granted. HIPPO is ordered to admit or deny these RFAs in its own capacity, and to respond as to any other entity of which it has the requisite knowledge.

HIPPO gave the same response to RFA No. 90, which asks whether the renewal application attached thereto was "a document YOU generated." *Id.* at 69. HIPPO explained at the hearing that the computer systems may have generated the application when it was time to renew the insurance policy. The renewal was therefore "automatic" insofar as the system made the document based on preexisting information without prompting from Plaintiff or anyone else. The Court agrees that confirming such explanations could involve further discovery. Plaintiff replied at the hearing that with an upcoming discovery cutoff and plans to depose Defendants, Plaintiff needs the explanation soon. HIPPO is ordered to search for documents and information that will enable it to respond to this RFA, serve a supplementary response if it can, and at minimum be prepared to address this issue during deposition. The motion to compel a further response to this RFA is otherwise denied.

RFA No. 95 asks whether HIPPO understood in March 2021 that the Property was damaged from the First Fire. *Id.* at 70. HIPPO admitted that Plaintiff suffered a claim for it but denied that the damages were covered. *Id.* at 71. This conditional answer confuses the issue at best and fails to respond to the actual RFA at worst. HIPPO shall provide a response that admits or denies the RFA as presented.

HIPPO's response to RFA No. 101 again stated that the document at issue, purportedly a letter of recission "from YOUR lawyers to Dr. Sheikh dated February 23, 2022," for the policy "speaks for itself." *Id.* at 72. HIPPO also denied that the document states what the RFA claims,

---

[7] As discussed below, HIPPO tried to explain at the hearing why there might be a renewal application for an insurance policy's otherwise automatic renewal. *See infra.* The veracity of the claim is irrelevant to whether discovery on this issue, and HIPPO's response, is appropriate.

but did not explain why the RFA is incorrect or what the letter actually is. *Id.* The answer is evasive and insufficient, and HIPPO is ordered to file a supplemental response explaining its denial without reliance on the letter. *See FDIC*, 271 F.R.D. at 195.

When RFA No. 108 asked HIPPO to admit that it never paid Plaintiff insurance benefits based on the second fire, HIPPO admitted it but also explained why it rescinded the policy. *Id.* at 73-74. As with RFA No. 95, the conditional answer confuses the issue at best and fails to respond to the actual RFA at worst. HIPPO shall provide a response that admits or denies the RFA as presented. Should HIPPO fail to do so, the Court will exercise its authority to interpret the existing responses as a complete admission. *See* Fed. R. Civ. P. 36(a)(6).

RFA No. 122 asks HIPPO whether it asked Plaintiff for "private information," with a list of examples, to process the claim for the Second Fire. ECF No. 44 at 74. HIPPO denied this because while it did ask Plaintiff for various records, all such records are considered "public information." *Id.* at 75. Plaintiff argues that this answers a different question than what the RFA posed. *Id.* The Court disagrees. HIPPO plainly denied Plaintiff's allegation that it asked for "private information," the core of the RFA, while providing examples of the information it did ask Plaintiff to provide. The motion to compel a further response to this RFA is denied.

As discussed above, the motion to compel further responses is granted as to RFA Nos. 7-10, 12, 14, 16, 24, 33-34, 48-52, 58, 60-61, 64, 76-78, 88-90, 95, 101, and 108.

**D. Sanctions**

Pursuant to Federal Rule of Civil Procedure 37(a)(5), when a motion to compel is granted the court must award to the moving party reasonable expenses, including attorney's fees, unless certain exceptions apply. One of those exceptions is where the opposing party's response or objection was substantially justified. Fed. R. Civ. P. 37(a)(5)(A)(ii). Another concerns any time where "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii).

Here, the Motion to Compel was granted in part, and denied in part. In such circumstances the court may still apportion fees. Fed. R. Civ. P. 37(a)(5)(c). However,

although Plaintiff asks for an award of attorney's fees in its motion, the joint statement does not reiterate this argument or detail the fees incurred through this motion. *Compare* ECF No. 35 at 2 *with* ECF No. 44. The Court lacks the information necessary to evaluate possible sanctions. It therefore finds no award of sanctions is appropriate. However, the Court notes that many of Defendants' stated positions in the joint statement are clearly meritless. If in any future discovery disputes Defendants take clearly meritless positions, the Court will not hesitate to apportion fees as a sanction.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Compel (ECF No. 35) is GRANTED IN PART and DENIED IN PART as set forth herein.

2. Plaintiff's request for sanctions Motion to Compel (ECF No. 35 at 2) is DENIED.

IT IS SO ORDERED.

DATED: May 2, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE