UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D., | No.  2:23-cv-01582-TLN-SCR |
| Plaintiff, | |
| v. | ORDER |
| SPINNAKER INSURANCE COMPANY, et al., | |
| Defendants. | |

Before the court is Defendants' motion for a protective order regarding Rule 30(b)(6) depositions noticed by Plaintiff.  ECF No. 60.  Plaintiff filed an opposition brief and Defendants filed a reply.  ECF Nos. 62, 67.  The Court heard arguments on Defendant's motion on June 20, 2025.  ECF No. 69.  For the reasons provided below, in addition to the reasons provided at the hearing, the Court now grants in part, and denies in part, Defendant's motion for a protective order as follows.

**BACKGROUND**

This case concerns insurance policy coverage for claimed losses at a property belonging to Plaintiff.  The defendants are Spinnaker Insurance Company ("Spinnaker") and Hippo Analytics, Inc., doing business as Hippos Insurance Services ("HIS").  Plaintiff's claims are for (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) intrusion into private

1

affairs, and (4) declaratory relief. Plaintiff's allegations constituting the factual background for this dispute are described in the Court's other discovery orders (ECF Nos. 54 & 55) and are not recounted here. However, the parties included additional factual assertions and supporting documents in their filings related to Defendants' motion, which are discussed below to the extent necessary to provide context for the Court's decisions.

On April 26, 2025, Plaintiff served separate Rule 30(b)(6) deposition notices to each defendant in this case. Each notice includes 25 deposition topics. The parties conferred about Defendants' objections to those topics on May 16, 2025. Through the meet and confer process, Plaintiff agreed to withdraw one topic and to pursue another through a non-party witness or witnesses. Six topics remain contested. Pursuant to a schedule previously set by the Court during an informal discovery conference on May 13, 2025, Defendants then filed the instant motion.

Defendants seek a protective order as to six of the topics, arguing generally that they are "(1) overbroad; (2) unreasonably cumulative or duplicative; (3) can be obtained from some other source that is more convenient, less burdensome, or less expensive; and/or (4) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." ECF No. 60 at 2. The contested topics are:

- **Topic 2**: Coverages and benefits under Policy Nos. DCA-2982510-00 and 2982510-01;

- **Topic 3**: The collection of insurance premiums, deductibles, and payments collected from Dr. Sheikh with respect to Policy No. DCA-2982510-00 and/or Policy No. DCA-2982510-01, including any autopay options;[1]

- **Topic 7**: The corporate and business relationship between Hippo and Spinnaker, including ownership and corporate structure;[2]

- **Topic 8**: The corporate and business relationship between Hippo and Topa Insurance Company ("Topa"), including ownership and corporate structure;[3]

---

[1] Defendants seek a protective order limited to precluding testimony on collection of premiums for DCA-2982510-00, underwritten by Topa Insurance Company, which is not a party to this action.

[2] Defendants seek a protective order limited to precluding testimony on Defendants' corporate structures, as Defendants are willing to stipulate there is neither a vertical nor horizontal corporate relationship between them.

[3] Defendants seek a protective order limited to precluding testimony on corporate structure, as Defendants are willing to stipulate there is no corporate relationship between Topa and HIS.

2

- **Topic 11**: The reason for and effect of the change from Topa to Spinnaker concerning Policy No. DCA-2982510-00 and Policy No. DCA-2982510-01; and

- **Topic 13**: The financial condition and net worth documents produced by Hippo and Spinnaker.

The Court heard argument on this motion by Zoom for approximately an hour on June 20.

## LEGAL STANDARDS

As a general rule, discovery may be obtained regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The discovery process in theory should be cooperative and largely unsupervised by the district court." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1219 (9th Cir. 2018). A party seeking to avoid discovery accordingly bears the burden of showing why that discovery should not be permitted. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Courts may limit discovery when:

> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). Courts may also issue protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such an order may, *inter alia*, forbid disclosure or discovery, specify terms and conditions thereof, limit the scope to certain matters or prohibit discovery as to certain matters, and prohibit the parties from sharing confidential commercial information or limit how they do so. Fed. R. Civ. P. 26(c)(1)(A), (B), (D), (G).

A protective order may issue only upon a showing of good cause. "District courts possess 'wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection.'" *Swenson v. GEICO Cas. Co.*, 336 F.R.D. 206, 209 (D. Nev. 2020) (quoting *Grano v. Sodexo Mgmt., Inc.*, 335 F.R.D. 411, 414 (S.D. Cal. 2020)). The party seeking a protective order "bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v.*

3

*Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). "[C]onclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection, Inc. v. Kirklands, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010).

## ANALYSIS

**A. Topic 2: Coverages and benefits under Policy Nos. DCA-2982510-00 and 2982510-01.**

Defendants' argument is two pronged: First, that the coverages and benefits under the policies are not relevant because HIS rescinded the second and pivotal policy based on Plaintiff's alleged concealment that the property was vacant. Second, because Plaintiff does not allege that the terms of the policy are ambiguous, Rule 30(b)(6) testimony would constitute impermissible legal conclusions or lay opinion testimony under Federal Rule of Evidence ("FRE") 701. Plaintiff responds that Defendants' understanding of what the policy covers is relevant to her claims.

"Courts routinely allow discovery into the meaning of insurance policy provisions in breach of contract cases." *Colony Ins. Co. v. Sanchez*, 2019 WL 3241160, at *2 (D. Nev. July 18, 2019). Moreover, "courts do not generally resolve the issue of ambiguity through a motion to compel and will instead allow the discovery to proceed notwithstanding arguments of a lack of ambiguity." *Riverport Ins. Co. v. State Farm Fire & Cas. Co.*, 2018 WL 6435883, at *2 (D. Nev. Dec. 6, 2018). To the extent an agreement is ambiguous, a party's testimony regarding the terms of the agreement is normally relevant. *See Corbrus, LLC v. 8th Bridge Capital, Inc.*, 2022 U.S. Dist. LEXIS 166448, at *57 (C.D. Cal. Sep. 13, 2022) (stating that a party's understanding of a contract is admissible if it can aid in determining the mutual intention of the parties).

The Court finds good cause for a protective order preventing Plaintiff from questioning a Rule 30(b)(6) deponent about Topa's interpretation of the coverages and benefits under either policy, given that Topa is a separate entity from Defendants. However, precluding other testimony about the policies is unwarranted and would be unworkable in practice. As indicated above, the weight of authority appears to be that the testimony Plaintiff seeks is permissible in a breach of contract action like this one. But assume the Court were to limit policy-related

4

testimony only to policy language that is ambiguous. Unless the parties agreed on a line-by-line basis as to which language is ambiguous and which is not, the Court would have to make its own line-by-line determination of the same. The better course is to allow Plaintiff to question Defendants on this topic, with the understanding—as Plaintiff's counsel represented at the June 20 hearing—that Plaintiff will not ask needless and potentially harassing questions about the meaning of clearly unambiguous terms.

The Court notes Defendants' position that this topic would better be pursued through an interrogatory. ECF 60 at 8. Plaintiff correctly responds, however, that Defendants objected to and did not meaningfully respond to her interrogatory on this topic (Interrogatory 12). ECF Nos. 62 at 8 & 62-1 (Almadani Dec.) Exh. B & C. While that interrogatory was not included in Plaintiff's earlier motion to compel, as the Court indicated at the June 20 hearing, Defendants' objection to that interrogatory appears to be at odds with the Court's motion to compel order (ECF No. 55). A supplemental response to that interrogatory may accordingly be appropriate.

**B.  Topic 3: The collection of insurance premiums, deductibles, and payments collected from Dr. Sheikh with respect to Policy No. DCA-2982510-00 and/or Policy No. DCA-2982510-01, including any autopay options.**

With this topic, Plaintiff seeks Rule 30(b)(6) testimony for Defendants to confirm that she made all of her payments as to both policies. Defendants represented at the June 20 hearing that they would be willing to stipulate to Plaintiff having made such payments. In light of the willingness of Defendants to make that stipulation, a deposition on this topic would be needlessly burdensome. Defendants' motion for a protective order to preclude Rule 30(b)(6) testimony on this topic is accordingly granted.

**C.  Topic 11: The reason for and effect of the change from Topa to Spinnaker concerning Policy No. DCA-2982510-00 and Policy No. DCA-2982510-01.**

This topic concerns information that is, at most, minimally relevant to the claims in this action and it would be unduly burdensome for Defendants to produce a Rule 30(b)(6) deponent on this topic. To the extent that Plaintiff seeks to authenticate written communications about the change from Topa to Spinnaker, that can be done with less burden through a stipulation or, if

1 necessary, a request for admission. Defendants' motion for a protective order to preclude Rule
2 30(b)(6) testimony on this topic is accordingly granted.

**D. Topic 7: The corporate and business relationship between Hippo and Spinnaker, including ownership and corporate structure. / Topic 8: The corporate and business relationship between Hippo and Topa, including ownership and corporate structure.**

Defendants seek a protective order to preclude questioning only as to <u>corporate structure</u> as to both of these topics. Defendants represent that they are willing to stipulate that there is no vertical or horizontal corporate relationship between any of the listed entities. Defendants agree to produce a deponent to testify as to the <u>business relationship</u> between the entities under each topic. Given that corporate structure is, at most, minimally relevant to the claims in this case, and the burden of preparing a Rule 30(b)(6) deponent to answers questions about corporate structure, the Court grants the requested protective order.

**E. Topic 13: The financial condition and net worth documents produced by Hippo and Spinnaker.**

Plaintiff seeks punitive damages. Financial condition and net worth are accordingly relevant. Defendants object that their financial condition and net worth is an expert issue and that Rule 30(b)(6) testimony on those topics is accordingly premature. Defendants further object that such testimony would be unduly burdensome given that an outside firm does their accounting and finances.

While either party may ultimately seek to present expert testimony as to Defendants' financial condition and net worth, properly tailored Rule 30(b)(6) testimony would likely constitute a critical foundation for any such expert testimony. As in other topical areas, "document production is generally not a substitute for a Rule 30(b)(6) deposition" when it comes to financial condition and net worth. *See United States ex rel. Griffis v. EOD Tech., Inc.*, (E.D. Tenn. May 10, 2024). Courts accordingly regularly allow Rule 30(b)(6) testimony on current financial condition and net worth in punitive damages cases. *See DelVecchia v. Frontier Airlines*, 2020 WL 2308224, at *3 (D. Nev. May 8, 2020). However, because "the questioning must be proportional to the needs of the case … only the most recent information regarding Defendant's

financial conditions for purposes of determining current net worth should be the focus of the questioning." *Id*. Accordingly, the Court grants Defendants a protective order on this topic only to the extent Plaintiff seeks testimony on historic financial condition and net worth.

Defendants protest that "there is no one person at either Spinnaker or HIS who would have sufficient personal knowledge to be able to opine about every aspect of either's finances to be able to testify about financial condition." ECF 67 at 11. However, Defendants no doubt have staff with organic familiarity with these topics who could be further educated as necessary. "[T]he law is well-established that a 30(b)(6) deponent does have an affirmative obligation to educate himself as to the matters regarding the corporation. Rule 30(b)(6) explicitly requires [a company] to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires persons to review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition." *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co*., 201 F.R.D. 33, 36-37 (D. Mass. 2001).

### F. Sanctions

Plaintiff requests sanctions for having to respond to Defendants' motion. Plaintiff cites no authority for this request except for Rule 37 generally. However, Rule 37 does not expressly contemplate sanctions against a party seeking a protective order, let along apportionable sanctions when a protective order is granted in part and denied in part. Nor is this a situation where sanctions would be appropriate under the Court's inherent authority because in seeking a protective order Defendants have not "willfully abused the judicial process or otherwise conducted litigation in bad faith." *In re Itel Sec. Litigation*, 791 F.2d 672, 675 (9th Cir. 1986) (citations omitted).

### CONCLUSION

For the reasons provided above and discussed on the record at the June 20, 2025 hearing, **IT IS HEREBY ORDERED:**

1. Defendants' motion for a protective order (ECF No. 35) is GRANTED IN PART and DENIED IN PART as set forth herein.

1    2.  The parties shall bear their own costs and attorney's fees in connection with this
2 motion.
3       SO ORDERED.
4 DATED: June 24, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

8