UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIRDOS S. SHEIKH, M.D.,<br>Plaintiff,<br>v.<br>SPINNAKER INSURANCE COMPANY,<br>Defendant. | No. 2:23-cv-01582-TLN-SCR<br><br>ORDER |

This action concerns an insurance coverage dispute. Plaintiff contends that Defendant Spinnaker impermissibly asserts attorney-client privilege to withhold information in certain emails and claim file documents produced in discovery. Plaintiff filed a motion to compel production of unredacted versions of these emails, and the parties filed a joint statement on the dispute. ECF Nos. 117, 136. The undersigned heard the dispute on July 2, 2026, and took the matter under submission at the conclusion of that hearing.[1] After further review of the record, the Court now DENIES the motion, but requires Defendant to take certain additional actions with respect to the contested documents.

## I. Legal Standards

Because the Court is exercising diversity jurisdiction over state law claims in this case,

[1] At the hearing, the Court resolved on the record an unrelated issue presented by the motion to compel. ECF No. 142.

California law applies regarding the existence and scope of attorney-client privilege. *See In re California Pub. Utilities Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law."); Fed. R. Evid. 501 (establishing that in civil cases, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"). "The Court accordingly applies California law to determine if there has been a waiver of attorney-client privilege." *Attia v. Oura Ring, Inc.*, No. 23-cv-03433-HSG (LJC), 2025 WL 2962866, at *4 n.3 (N.D. Cal. Oct. 21, 2025).[2]

Under California law, attorney-client privilege "may be waived impliedly or by disclosure of the subject communication." *Transamerica Title Ins. Co. v. Superior Ct.*, 188 Cal. App. 3d 1047, 1052 (Cal. Ct. App. 1987). California Evidence Code § 912(a) provides that the right of any person to claim attorney-client privilege "is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." "What constitutes a significant part of the communication is a matter of judicial interpretation." *Transamerica*, 188 Cal. App. 3d at 1052. "[T]he privilege-claimant has the initial burden of proving the preliminary facts to show the privilege applies. Once the claimant establishes the preliminary facts ... the burden of proof shifts to the opponent of the privilege. To obtain disclosure, the opponent … of the privilege may show that the privilege has been waived under [Evidence Code] section 912." *Roman Catholic Archbishop of Los Angeles v. Superior Ct.*, 131 Cal.App.4th 417, 422 (Cal. Ct. App. 2025) (cleaned up).

## II. Background on the Dispute

The contested documents are certain emails and claim file documents concerning the first fire at Plaintiff's property. ECF 99-1 at 41-65 (the "Contested Documents"). That first fire occurred when Plaintiff's insurance was administered by Hippo Insurance Services ("Hippo") and underwritten by Topa Insurance Company ("Topa"). ECF No. 136 at 2. Hippo paid the first fire

---

[2] By contrast, as explained in reference to an earlier privilege dispute in this case, once a federal court sitting in diversity jurisdiction finds that there has been a waiver under state law, federal law governs the *scope* of that waiver. See Order, ECF No. 112 at 2-3 (Mar. 5, 2026).

claim to Plaintiff on July 29, 2021. *Id*. Neither Hippo nor Topa are currently parties to this action, though Hippo had been a defendant before its dismissal by stipulation. ECF No. 73-74. The heavily redacted documents at issue include emails by and between various Hippo employees and a Topa employee, as well as claim "notes." ECF 99-1 at 43-64. It is uncontested that these documents concern the first fire and not the insurance dispute over the second fire that is the basis for Plaintiff's claims in the current action.

**III. Analysis**

The dispute over privilege boils down to the question of whether Topa disclosed the Contested Documents to Spinnaker or some other third party *in an unredacted form*. "Plaintiff contends that any alleged privilege Topa could have claimed was waived when the documents and/or their subject matter were revealed to Spinnaker, an entity separate from Topa." ECF No. 136 at 11. Plaintiff asserts several factual predicates—some contested—for this contention. First, prior to issuing the new policy, Spinnaker was aware both of the first fire claim and that Hippo was processing that claim. *Id*. Second, statements in Hippo and Topa policy documents state that they would share with their affiliates Plaintiff's information concerning claims previously filed. *Id*. Third, Spinnaker's production of the Contested Documents in response to an RFP shows that it has possession of those documents. *Id*. Fourth, the incorporation of information about the first fire claim into an outside lawyer's opinion letter to Spinnaker, concerning the second file claim, itself represents a disclosure of "First Fire opinions to Spinnaker[.]" *Id*. at 12.

Defendant Spinnaker argues that Topa never voluntarily disclosed unredacted versions of the Contested Documents to Spinnaker. In particular, "testimony by Spinnaker confirms that Topa did not share its claim file with Spinnaker, i.e. Topa's unredacted claim file was never in the possession of Spinnaker." *Id*. at 15 (citing ECF No. 131, Schiff Decl., ¶¶ 5-6). This position is also supported by Spinnaker's answer to Plaintiff's Interrogatory 22, which asked when Spinnaker came into possession of the Contested Documents "in redacted form" or to state the basis for any contention that "Spinnaker has not and does not possess [those] documents … in undredacted form[.]" Spinnaker's substantive answer, in full:

> Spinnaker Insurance Company, and particularly the underwriting department which evaluated the insurability of Plaintiff's property located at 9005 Calvine Road in March, 2021, never obtained an unredacted copy of the Topa Insurance Company's claim file relating to Claim No. 138505, a fire loss, at any time prior to the issuance of the Spinnaker Insurance Policy to Plaintiff, or any time thereafter to date. At all times, Responding Party is informed and believes that, in this litigation, to the extent necessary to comply with discovery obligations in this case, materials relating to Topa Insurance Company's claim file were provided directly from Hippo Analytics, Inc. dba Hippo Insurance Services ("Hippo Insurance Services") who was a party at that time, to its counsel in this action for production in this case, because Plaintiff is entitled to the non-privileged portions of her claims file pursuant to 10 California Code of Regulations section 2695.3 and Insurance Code sections 10082.3 and 2071. However, Spinnaker lacks any information or belief about whether the aforementioned provision of documents to counsel by Hippo Insurance Services was provided in redacted or unredacted form because Responding Party has not seen the originally provided documents.

ECF No. 136-1 at 447-48. In short, Spinnaker's sworn position is that (1) Topa did not share its claim file regarding the first fire with Spinnaker (either directly or through Hippo), and (2) it never possessed unredacted versions of the Contested Documents—Hippo provided the Contested Documents to its litigation counsel.

Plaintiff does not believe this is credible or true. Plaintiff begins by arguing that she impeached Spinnaker's Rule 30(b)(6) deponent on the question of whether Spinnaker "was aware both that the First Fire Claim was open, and that Hippo (Spinnaker's own managing agent) was processing that claim." ECF No. 136 at 11. Plaintiff bases this on two nearly identical "ISO Claim Search" documents produced by Spinnaker in response to an RFP and dated February 11, 2021. ECF No. 136-1 at 149 (Exh. 129) & 154 (Exh. 130). Each document includes a tag at the top "Search by SPINNAKER INSURANCE COMPANY," and lists the then-pending first fire claim as "Match #:1" for Plaintiff's "SSN" or "SSN+phone number." Plaintiff reasonably believes that this shows that Defendant Spinnaker was aware of the first fire claim at the time it underwrote her new policy. Spinnaker has a different explanation: Mark Boone, who was adjusting Plaintiff's first fire loss for Topa "did not change a default setting for 'search by' information from Spinnaker to Topa [who had terminated its relationship with Hippo] when he ran ISO searches of Plaintiff and the subject property as part of his work adjusting the first fire loss which had just been tendered to Topa by Plaintiff." ECF No. 136 at 16 (citing ECF No. 119, at 170, 175; ECF No. 131 at 3-4).

The undersigned finds the record on this point inconclusive. Both parties' explanations are plausible. But even crediting Plaintiff's contention that Spinnaker was aware of the first fire claim due to the ISO searches,[3] it does not necessarily follow that Hippo or Topa had disclosed the Contested Documents to Spinnaker in any form, let alone in unredacted form.

Plaintiff also notes that it was Spinnaker that produced the Contested Documents to Plaintiff, meaning that Spinnaker must have had possession of them. Indeed, on March 3, 2025, Spinnaker included the following in its responses to one of Plaintiff's RFPs:

> REQUEST FOR PRODUCTION NO. 1:
> All DOCUMENTS in the POLICY claim file regarding the claim numbers 00138505, 00315844, and 00353496.
>
> RESPONSE TO REQUEST FOR PRODUCTION NO. 1:
> Incorporating the above general objections, Responding Party has produced all non-privileged documents responsive to this request in its possession, custody, and control identified as DEFT_004563-006684 and DEFT_006685-006695.

ECF No. 136-1 at 17. The Contested Documents are within the range identified in this response and thus were apparently contained within one of the identified "POLICY claim file[s]." However, as with the ISO search issue discussed above, Spinnaker's production of redacted versions of these documents does not show that it has unredacted versions of the same documents and that Topa's privilege was accordingly waived. *See* ECF No. 136 at 16 ("Spinnaker acknowledges it has, at least in the technical sense, the documents produced to Plaintiff, i.e. the documents in redacted form."). Moreover, Spinnaker's answer to Interrogatory 22 appears to clarify that litigation counsel for Hippo (who also represents Spinnaker) received the Contested Documents from Hippo before Spinnaker produced them in a redacted format.

Finally, Plaintiff argues that incorporation of privileged information concerning the first fire claim into legal opinion letters concerning the second fire claim (which were disclosed to

---

[3] The Hippo policy that Plaintiff was issued while that policy was underwritten by Topa further supports the inference that Spinnaker may have had access to information that Plaintiff provided to Hippo and Topa. Among other provisions concerning information sharing, that policy states, "We may share information we collect from and about you (and your device) with a parent, subsidiary or affiliate entity within the Hippo corporate family. Any organization to which we provide such information is required to keep your information confidential and to only use such information in accordance with this privacy statement." ECF No. 136-1 at 65 (Exh. 102).

Spinnaker) constitutes a subject matter waiver that covers the Contested Documents. However, Plaintiff's conception of subject matter waiver is overly expansive. Plaintiff relies on case law finding that any voluntary disclosure of privileged information "constitutes waiver of the privilege as to all other such communications on the same subject." ECF No. 136 at 11, 13 (quoting *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010).[4] However, as explained in the context of another recent dispute in this action, Federal Rule of Evidence 502(a) modified the subject matter waiver rule when it was enacted in 2008.[5] ECF No. 112 at 2-3. Now subject matter waiver is limited "to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials." 8 Charles Alan Wright, et al., Federal Practice and Procedure § 2016.2 (3d ed., 2010 update). Spinnaker is not seeking to rely on any advice that Topa might have received from its counsel; the undersigned sees no basis in the current record to find a waiver over Topa's first fire documents based on Spinnaker's own advice of counsel defense as to the second fire.

For all these reasons, the Court will deny Plaintiff's motion to compel Spinnaker to produce unredacted versions of the Contested Documents. However, the Court remains concerned about the propriety of the redactions on the Contested Documents. For example, two of the documents contain redactions, but are not logged as containing attorney-client privileged information. ECF No. 99-1 at 43 (fully redacted email dated February 12, 2021, DEFT_005316; *id*. at 64 (partially redacted email dated May 24, 2021, DEFT_004598). One of those documents is logged as withheld only on the basis of a regulation that allows an insurer to withhold claims

---

[4] The language Plaintiff quotes from *Hernandez* is actually a parenthetical quotation in *Hernandez* from *Weil v. Investment/Indicators, Research & Mgmt., Inc*., 647 F.2d 18, 24 (9th Cir. 1981).

[5] *Hernandez* relied on older cases like *Weil*, which were abrogated to some degree by the FRE 502(a) framework, and does not purport to harmonize those older cases and FRE 502(a). *See Gateway Deliveries, LLC v. Mattress Liquidators, Inc*., No. 2:14-CV-02033 JWS, 2016 WL 232427, at *2 (D. Ariz. Jan. 20, 2016) (finding that the rule from *Weil* "was modified when Rule 502(a) was adopted in 2008" and rejecting reliance on that same rule); *Orthopaedic Hospital v. DJO Global, Inc*., No.: 3:19-cv-00970-JLS-AHG, 2020 WL 536330 (S.D. Cal. Sept. 9, 2020) (citing *Gateway Deliveries* for same finding). Plaintiff does not make a case for subject matter waiver under the FRE 502(a) framework.

file information if it would "alert a claimant to the fact that the claim is being investigated as a possible suspected fraudulent claim." ECF No. 99-1 at 80 (citing 10 Cal. Code Reg. §§ 2695.7(b)(2) & (c)(2)). That cannot possibly be a legitimate basis to withhold information from Plaintiff now, years after the claim was resolved. Moreover, there are two different redaction formats—the word "REDACTED" and black block overwriting—leading to the inference that each format may indicate redaction by a different user or for a different purpose. For these reasons, it appears that Defendant is withholding more information from the Contested Documents than it should be.

To ensure that only bona fide attorney-client privileged information is being withheld, the Court will require Defendant's counsel to do as follows: (1) review the versions of the Contested Documents in the form they were originally received from Hippo; (2) reproduce those documents redacting only attorney-client privileged information, though Defendant may also designate those documents as confidential under the Protective Order (ECF No. 33) in order to account for other confidential or sensitive information; and (3) supplement the privilege log in a manner consistent with this new production.

## IV. Conclusion

For the foregoing reasons, the Court ORDERS:

1. Plaintiff's Motion to Compel (ECF No. 117) be DENIED.
2. Defendant complete the review and reproduction measures identified above within fourteen (14) days of the date of this order.

**SO ORDERED.**

DATED: July 12, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE